IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) CR 18-181 |
| | ) |
| DARYL WILLIAMS | ) |
| | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant Daryl Williams ("Williams") was indicted for possessing para-fluoroisobutyryl fentanyl, fentanyl, and heroin with intent to distribute, and for possession of a firearm in furtherance of drug trafficking. He is alleged to have engaged in this conduct on two separate occasions – on May 6, 2018 and, while on bond, on May 29, 2018. Williams has filed a Motion to Suppress (ECF # 78) related to evidence seized in connection with the arrest made on that first occasion – May 6, 2018. Based upon the Defendant's asserted desire for an in-person evidentiary hearing on the matter and this Court's temporary inability to hold an in-person proceeding due to the COVID-pandemic, this Court eventually held a hearing on September 14, 2021.[1] After careful consideration, the Court enters the following Findings of Fact and Conclusions of Law in support of its denial of the Motion.

**I. Findings of Fact:**

1. Lieutenant Chad Rannigan ("Rannigan") has worked in law enforcement for over 25 years. ECF No. 114, p. 2-3.

2. He currently serves as a Lieutenant with the Greentree Boro Police Department. He also serves as the evidence custodian. ECF No. 114, p. 3.

---

[1] The hearing transcript is docketed at ECF # 114. It will be referred to as "ECF No. 114, p. _" for purposes of citation throughout this opinion.

1

3. Rannigan also holds a position as an adjunct professor at the University of Pittsburgh and teaches classes in Introduction to the Administration of Justice and Introduction to Law Enforcement. ECF No. 114, p. 3.

4. Given his many years of experience as a law enforcement officer, and his particular service as an evidence custodian, Rannigan is well acquainted with the smell of marijuana. ECF No. 114, p. 3-4.

5. In the early hours of May 6, 2018, Rannigan was on duty. He was positioned alone, in a police car that was equipped with audio and video systems that record both inside and outside of the car. ECF No. 114, p. 5-6. A copy of the audio and video recordings from the May 6, 2018 stop involving Williams was admitted into evidence during the evidentiary hearing as Exhibit 1.

6. At approximately 3:25 a.m., Rannigan observed two vehicles, one of which was a BMW, at the entrance of the Holiday Inn Express at the Parkway Center Mall. ECF No. 114, p. 7.

7. It is his practice to run the license plates of cars positioned in front of him at red lights and, consistent with this practice, he ran the license plate of the BMW. ECF No. 114, p.

8. The license plate came back as being registered to an Infiniti, in the name of the Defendant, Daryl Williams ("Williams"), which caught Rannigan's attention. ECF No. 114, p. 7.

9. Rannigan acknowledged that this discrepancy can happen when someone purchases a vehicle and fails to properly transfer title, but he noticed that there were no temporary stickers on the BMW suggesting that it was a newly purchased car. ECF No. 114, p. 8.

10. Rannigan than checked on Williams' driver's license, viewed his photograph, and learned that Williams' license was suspended. ECF No. 114, p. 8-9.

11. He circled the parking lot to come back to the BMW and saw two individuals enter the BMW. ECF No. 114, p. 10-11.

12. Rannigan also noticed what he believed to be non-factory window tinting. ECF No. 114, p. 9-10. Both operating a vehicle without transferring the registration and with a switched plate,  and the window tinting are violations of the Pennsylvania Vehicle Code.

13. He intended to make a traffic stop but, at that point, a minivan with New York plates got in between Rannigan's car and the BMW. Both the minivan and the BMW proceeded to enter the underground hotel parking garage. ECF No. 114, p. 10-11.

14. Rannigan followed the cars into the tight garage.  The BMW backed into a spot next to the elevator and Rannigan blocked its exit with his car. ECF No. 114, p. 11-12.

15. At this point, Rannigan he could see into the BMW and confirmed that Williams was operating the car. He then activated his emergency lights. ECF No. 114, p. 12.

16. He radioed county dispatch to alert them to his location. While doing so, he saw three people exit the BMW and head toward the elevator. Rannigan later determined that Williams, his brother Melo Williams, and Raymont Hopkins were the individuals who exited the car. ECF No. 114, p. 13.

17. Rannigan then lowered his window, asked the individuals to stop and exited his car. ECF No. 114, p. 13.

18. The BMW, which was approximately ten years old, was locked with all doors and windows shut. ECF No. 114, p. 23.

19. Rannigan testified that a closed and locked car can still emit the smell of marijuana. ECF No. 114, p. 24.

20. Rannigan could smell marijuana emanating both from the car and from Williams and the two other individuals. ECF No. 114, p. 14. He stated that "it was very obvious that they had just been smoking marijuana inside the vehicle." ECF No. 114, p. 14.

21. He estimated that the three individuals were approximately 10-15 feet away from the car. ECF No. 114, p. 23-24.

22. He asked Williams for his driver's license, car registration and proof of insurance. Williams provided a driver's license but neither the registration nor insurance. ECF No. 114, p. 15.

23. Rannigan confirmed it was not Williams' license. Williams explained that it was his older brother's and then provided his state identification. ECF No. 114, p. 15.

24. Upon questioning, Williams initially denied then eventually admitted to smoking marijuana. ECF No. 114, p. 16.

25. Rannigan then returned to his car in order to verify Williams' identification and to position his car so as to better capture on video the encounter. He was the only officer on scene at this point and felt nervous because he was outnumbered and believed that each individual present could have overpowered him. He called for backup. ECF No. 114, p. 16-17.

26. Officer Ryan Bacci ultimately responded to the scene. ECF No. 114, p. 17.

27. Rannigan then returned to Williams who was still near the BMW. After another exchange about smoking marijuana, Williams removed a bag of marijuana from his pocket and handed it to Rannigan. ECF No. 114, p. 18.

4

28. Rannigan and Williams then discussed a search of the BMW, with Williams asking about a search warrant and Rannigan stating that he did not need one. The BMW was locked and Williams declined to open the car. He also refused to get back into the car. ECF No. 114, p. 18-19.

29. Rannigan then made the decision to search the car. He handcuffed Williams, reached into his pocket for the keys and unlocked the car, and placed Williams into the back seat of the police cruiser. ECF No. 114, p. 18-19.

30. Rannigan then searched the BMW and charged Williams. ECF No. 114, p. 19-20.

31. Rannigan's testimony that he smelled a strong odor of marijuana emanating from the BMW was credible.

## II. Conclusions of Law

1. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV.*

2. A defendant generally bears the burden of proving a challenged search or seizure was unreasonable under the Fourth Amendment. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (*citations omitted*). However, once the defendant has met this burden, by, for instance, showing that a search was conducted without a warrant, the burden shifts to the government to demonstrate that the search or seizure was reasonable. *Johnson*, 63 F.3d at 245. (*citations omitted*).

3. "The Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible." *United States v. Felder*, Crim. No. 19-343, 2021 WL

2024970, at * 2 (D.N.J. May 21, 2021), *citing, United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974).

4. Here, Williams has established that the BMW was searched without a warrant. As such, the burden shifts to the Government to demonstrate by a preponderance of the evidence that the evidence[2] is admissible.

5. Under the "automobile exception" to the warrant requirement, a police officer may conduct a warrantless search of a car if there is "probable cause to believe that the vehicle contains evidence of a crime." *See United States v. Donahue*, 764 F.3d 293, 299-300 (3d Cir. 2014) (*citations omitted*). "[P]robable cause does not dissipate after the automobile is immobilized because the exception does not include an exigency component." *See United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002) (*citations omitted*).

6. Probable cause to search a car exists where there is a "fair probability" that evidence of a crime or of contraband will be found inside the vehicle. *See Burton*, 288 F.3d at 103 (3d Cir. 2002) (*citations omitted*).

7. "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" *Donahue*, 764 F.3d at 301, *quoting, Illinois v. Gates*, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 2328 (1983).

8. "To determine whether probable cause exists, courts consider whether the historical facts leading up to a search, 'viewed from the standpoint of an objectively reasonable police officer,' amount to probable cause." *United States v. Ramirez-Mendoza*, Crim.

---

[2] The evidence in question consists of controlled substances (heroin and fentanyl) and a firearm.

No. 20-107, 2021 WL 4502266, at * 7 (M.D. Pa. Oct. 1, 2021), *quoting, Donahue*, 764 F.3d at 301.

9. Rannigan had ample probable cause to search the BMW. There was a "fair probability" that the BMW contained contraband or evidence of a crime such as marijuana.

10. Indeed, Rannigan smelled marijuana emanating from the BMW. "The odor of fresh marijuana emanating from [a] vehicle alone is enough to establish probable cause." *United States v. Cain*, Crim. No. 20-356, 2021 WL 3563391, at * 12 (W.D. Pa. Aug. 12, 2021) (*citing, California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982 (1991), *U.S. v. Ross*, 456 U.S. 798, 804-09, 102 S.Ct. 2157 (1982) and *U.S. v. Ramos*, 443 F.3d 304, 308 (3rd Cir. 2006).

11. "The odor of marijuana in a car can be evidence of the most persuasive character' and generally satisfies probable cause to search the entirety of a vehicle under the automobile exception." *Cain*, 2021 WL 3563391, at * 13, *quoting, United States v. Green*, 897 F.3d 173, 186 (3d Cir. 2018). *See also, United States v. Woodley*, Crim. No. 2020-4, 2021 WL 1082225 (D.V.I. Mar. 20, 2021) (finding automobile exception applies when police officer detected potent odor of marijuana coming from the car)

12. Here, Rannigan had more than simply the smell of marijuana emanating from the car to support probable cause. He had Williams' admission to smoking marijuana and a baggie containing the same.

13. Williams has not argued here, nor did he attempt to convince Rannigan at the time, that the marijuana in the baggie contained all of the remaining marijuana and that there was nothing left in the car. Even if he had, Rannigan was not required to accept such an

assertion. At that point in time Williams had already presented someone else's driver's license and had denied having any marijuana.

14. Further, Rannigan was not obligated to accept any suggestion that the car did not contain evidence of a crime. *See United States v. Edwards*, 769 F.3d 509, 515-16 (7th Cir. 2014).

15. Based upon the foregoing, the automobile exception applies in this case and a warrant was not required for Rannigan to search the contents of the BMW. He had probable cause to believe that the BMW contained evidence of contraband or criminal activity. As such, this Court need not consider whether the search falls within any other exceptions to warrant requirements, such as a lawful search incident to arrest.

The Motion to Suppress is denied.

Dated: November 29, 2021

BY THE COURT:

*/s/ Donetta W. Ambrose*

Donetta W. Ambrose
United States Senior District Judge
